AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

xxx Oneida Street Northeast
Washington, DC

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I ___Special Agent Joshua C. Green___ being duly sworn depose and say:

I am a(n) ___Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives___ and have reason to believe
    (Official Title)
that ☐ on the person of or ☒ on the property or premises known as  (name, description and or location)

xxx ONEIDA STREET NORTHEAST, WASHINGTON, D.C.  (This location is described as a multi-story red brick triplex residence located on the south side of Oneida Street Northeast between 3rd Street Northeast and 6th Street Northeast, Washington, D.C.  To the immediate right of the front door the residence is marked "xxx" in dark numbers on a white background.  The front door is white in color with a black colored outer security door.  Above the front door is a brown and white awning.  Directly to the left and attached to the residence is another residence that is marked "xxx".  The front yard has a grey colored chain link fence around it.)

concerning a violation of Title __21__ United States Code, Section(s) _§ 841(a)(1)._ The facts to support a finding of Probable Cause are as follows:

    See Attachment A

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN**

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

Vincent Caputy
Federal Major Crimes Section
(202) 514-6972

Signature of Affiant
Joshua C. Green, Special Agent
Bureau of Alcohol, Tobacco, Firearms and

Explosives

Sworn to before me, and subscribed in my presence

_____    at Washington, D.C.
Date

_____    _____
Name and Title of Judicial Officer           Signature of Judicial Officer

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**xxx ONEIDA STREET NORTHEAST**
WASHINGTON, D.C.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR xxx ONEIDA STREET NORTHEAST, WASHINGTON, D.C.  This location is described as a multi-story red brick triplex residence located on the south side of Oneida Street Northeast between 3rd Street Northeast and 6th Street Northeast, Washington, D.C.  To the immediate right of the front door the residence is marked "xxx" in dark numbers on a white background.  The front door is white in color with a black colored outer security door.  Above the front door is a brown and white awning.  Directly to the left and attached to the residence is another residence that is marked "xxx".  The front yard has a grey colored chain link fence around it.

Your affiant, Joshua C. Green, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF).  I am currently assigned to the Washington, D.C. area High Intensity Drug Trafficking Area (HIDTA) Task Force and I have been assigned to the HIDTA Task Force since becoming a Special Agent with the ATF in July of 2000.  Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service for over five years, the last three of which were in the Washington, D.C. area.  Since becoming a Special Agent with the ATF, I have taken part in numerous narcotics and firearms related investigations involving armed drug traffickers, armed gangs, felons in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking.  In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2. I have participated in the execution of over one hundred and fifty search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage.  In addition, these warrants have also led to the recovery of items such as

    shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

   A) It is common for narcotic traffickers to secrete narcotics in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

   B) It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

   C) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the premises and/or vehicles.

   D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as

property derived from the distribution of narcotics, and such items are often kept in their residence.

E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences and/or vehicles for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

1. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

2. On May 30, 2007, your affiant interviewed a Cooperating Defendant, hereafter referred to as CD-1. During the interview of CD-1 your affiant learned that CD-1 was a supplier of crack cocaine to numerous drug traffickers who operated illegal drug distribution operations in the Washington, D.C. area. CD-1 claimed to have been a supplier of crack cocaine to an individual known as "Ty". CD-1 claimed to not know this subject's complete name or address. Later, after searching CD-1's cell phone, a telephone number for "Ty" was found. Further research found that this number was used by Tyrone Harris of xxx Oneida Street Northeast, Washington, D.C.

3.

4. Research was conducted by your affiant and it was determined that the aforementioned Tyrone Harris was likely Tyrone Bernard HARRIS Jr. A criminal record check was conducted and it was found that Tyrone Bernard HARRIS Jr. had a criminal history to include an arrest in Prince George's County, Maryland on December 12, 2005, for Possession of a Controlled Dangerous Substance. HARRIS was subsequently convicted of this offense and was sentenced to six months Probation Without Judgment. HARRIS was also arrested on October 30, 2006, in Washington, D.C., and charged with Possession of an Open Container of Alcohol. While the disposition of the case is unclear, HARRIS claimed at the time of his arrest to live at xxx Oneida Street Northeast, Washington, D.C.

5.

6. An arrest booking photograph of HARRIS was obtained and on October 17, 2007, I interviewed a second Cooperating Defendant, hereafter referred to as CD-2.

       CD-2 was shown a photograph of HARRIS and CD-2 stated that HARRIS, whom CD-2 knew as "Ty", was a crack cocaine dealer who lives at xxx Oneida Street Northeast, Washington, D.C. CD-2 also believed that HARRIS was at one time in the last few years in possession of a .38 caliber revolver. Metropolitan Police Department officers who were present at the interview of CD-2 later informed me that they had received complaints of illegal drug dealing activity taking place at the residence.

7.

8.    On Tuesday, January 29, 2008, your affiant went to xxx Oneida Street Northeast, Washington, D.C. in order to conduct surveillance and obtain discarded trash from the location. I had previously consulted the Washington, D.C. government website and determined that residential trash is collected in that neighborhood on Tuesdays. In an alley at the rear of the location, I found a trash can directly behind the residence out in the alley, off the curtilage and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. I obtained a number of trash bags from the trash can located directly behind the residence and removed these bags for closer inspection away from the immediate area. All of the bags contained household garbage and some contained mail matter addressed to 331 Oneida Street Northeast, Washington, D.C. Inside some of the bags were smaller plastic bags, some of which were found to contain items indicative of narcotics trafficking by HARRIS. More specifically, I found the twisted and knotted tops of approximately a half a dozen sandwich bags as well as small pieces and stalks of green leafy substance. I field tested a portion of this green leafy substance and received a positive reaction for marijuana. I did not locate any smaller ziplock bags, the type more typically used to package small amounts of marijuana for personal use. From my experience, the pieces of sandwich bags I found would be more consistent with the removed tops from sandwich bags used to package drugs for later resale. In addition, the few stalks of suspected marijuana are indicative of marijuana trafficking in that it may represent the discarded portions of unwanted marijuana thrown out when breaking down larger quantities of marijuana for packaging and resale. Your affiant also located various documents in the discarded trash, including pieces of mail matter addressed to Tyrone HARRIS Jr. at xxx Oneida Street Northeast, Washington, D.C. In addition, I found a dry cleaning receipt in the name of Tyrone HARRIS Jr. dated January 22, 2008.

9.

10.   On Tuesday, February 5, 2008, your affiant again went to xxx Oneida Street Northeast, Washington, D.C. to obtain discarded trash from the location. Similar to the prior occasion, I found a trash can out in an alley at the rear of the location and directly behind the residence, off the curtilage, and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. I obtained a number of trash bags from the trash can located directly behind the residence and removed these bags for closer inspection away from the immediate area. All of the bags contained household garbage and some contained mail matter addressed to xxx Oneida Street Northeast, Washington, D.C. Inside some of the bags I found to

items indicative of narcotics trafficking by HARRIS.  More specifically, I again located the twisted and knotted tops of approximately a dozen sandwich bags as well as small pieces and stalks of green leafy substance.  I field tested a portion of this green leafy substance and received a positive reaction for marijuana.  I found only one smaller ziplock bag, the type more typically used to package small amounts of marijuana for personal use.  As noted before, from my experience, the pieces of sandwich bags I found would be more consistent with the removed tops from sandwich bags used to package drugs for later resale.  In addition, the few stalks of suspected marijuana are indicative of marijuana trafficking in that it may represent the discarded portions of unwanted marijuana thrown out when breaking down larger quantities of marijuana for packaging and resale.  Your affiant also located various documents in the discarded trash, including pieces of mail matter addressed to Tyrone HARRIS Jr. at xxx Oneida Street Northeast, Washington, D.C., one letter of which was dated January 14, 2008.

11.

12. In summary, based on the information contained herein, your affiant believes that Tyrone HARRIS Jr is utilizing **xxx Oneida Street Northeast, Washington, D.C.,** as a base to conduct and facilitate an illegal drug trafficking operation.  Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).  Your affiant believes that probable cause exists that within **xxx Oneida Street Northeast, Washington, D.C.** there is presently concealed drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency and/or other proceeds of narcotic sales.  These items are listed more completely on a separate sheet included with this application and labeled "Attachment A".

I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and curtilage, of **xxx Oneida Street Northeast, Washington, D.C.,** authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this _____ day of February, 2008.

_____
United States Magistrate Judge
District of Columbia

**ATTACHMENT A**

**List of Items to be Seized at Premises**

1. Paraphernalia for packaging, cutting, weighing and distributing illegal drugs, including but not limited to, scales, baggies, and cutting agents.

2. Firearms, firearm magazines, firearm attachments, ammunition, firearm parts and holsters as well as documentation of the purchase, storage, possession, disposition, dominion and control of firearms, including paperwork and receipts.

3. United States currency, precious metals, jewelry and financial instruments.

4. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

5. Address and telephone books and papers reflecting names, address and telephone numbers.

6. Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashier's checks related to the obtaining, secreting, transfer, and concealment of assets and/or the expenditure of money.

7. Electronic equipment, such as mobile telephones, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, computers, and any information stored in memory or contained in any related hardware and software.

8. Photographs and/or video tapes, in particular, those photographs and/or video tapes of co-conspirators, assets, controlled substances, or of individuals with controlled substances and those that assist in identifying associates and conspirators.

9. Indicia of occupancy, residence, and ownership of the premises, including but not limited to, utility and telephone bills, mail matter, canceled envelopes, and keys.